**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

EDWARD HOWARD,

        Petitioner,        Case Number: 2:10-CV-11606

v.        HON. NANCY G. EDMUNDS

NICK LUDWICK,

        Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS
CORPUS AND DENYING CERTIFICATE OF APPEALABILITY**

This matter is before the Court on Edward Howard's petition for a writ of habeas corpus, filed under 28 U.S.C. § 2254. Howard, presently incarcerated at the Mid-Michigan Correctional Facility in St. Louis, Michigan, challenges his convictions for possession of between 50 and 450 grams of cocaine, Mich. Comp. Laws § 333.7403(2)(a)(iii), and unauthorized possession, retention, or secreting of a financial transaction device, Mich. Comp. Laws §750.157n(1), on the grounds that insufficient evidence was presented to establish possession, and ineffective assistance of trial and appellate counsel. The Court denies habeas relief.

**I. Background**

Petitioner's convictions arise from a traffic stop of a vehicle driven by Petitioner in the city of Southfield.

David McCormick, a police officer employed by the Southfield Police

Department, testified that, on the afternoon of August 19, 2004, he was on routine patrol in a marked patrol car when he saw a while Lexus with an expired, out-of-state license plate. Officer McCormick confirmed through a check on the LEIN system that the license plate was expired and conducted a traffic stop. While approaching the vehicle, Officer McCormick noticed Petitioner, seated in the driver's seat, lean over. A female passenger, later identified as Abbany Harris, was seated in the passenger seat. Petitioner was visibly nervous. Officer McCormick requested Petitioner's license, proof of insurance, and registration. Petitioner gave him a Nevada registration, showing that the vehicle was registered to a man named Wilson, and a State of Ohio identification card. The Ohio identification card bore Petitioner's photo, but the name listed on the card was "Robert O. Bair."

Officer McCormick requested back-up based upon Petitioner's extreme nervousness. He also checked the identification card provided by Petitioner and found no record under the name "Robert O. Bair." After another officer arrived, Officer McCormick asked Petitioner and Harris to exit the vehicle. Petitioner admitted that his name was Edward Howard. Officer McCormick asked for and received permission to search the vehicle. Officer McCormick peered into the vehicle through the driver's side window and saw a fairly large bag of what appeared to be marijuana lying on top of a black plastic bag. Harris stated that the bag belonged to her. Officer McCormick arrested her. Petitioner was placed under arrest for driving without a license.

Officer McCormick testified that he searched the vehicle and found a credit report

with the name "Robert O. Bair," and, in a drawer under the driver's side, an Art Van credit card bearing the same name, and a receipt under Petitioner's real name. He also found an application for a replacement social security card in Robert O. Bair's name. Officer McCormick testified that the under-seat drawer was difficult to open. Officer McCormick returned to the police station and the vehicle was towed to the police impound yard. Once at the station, Officer McCormick realized he had left the Art Van credit card in the Lexus. He drove to the impound lot to retrieve the card. He opened the drawer under the driver's seat, noting that it was much easier to open than it had been the first time he had done so. This time when he opened the drawer, he saw a plastic baggie containing what appeared to be cocaine. He attempted to discern why he had not seen the baggie the first time and why the drawer had been so difficult to open initially. He deduced that the bag had been wedged underneath the seat bottom, interfering with the drawer's opening and closing, and had somehow been dislodged when he closed the drawer during the traffic stop.

      Police Officer Christine Miller testified that, on the afternoon of Petitioner's arrest, a woman, who identified herself as Mrs. Howard, appeared at the police station asking about an impounded Lexus. Mrs. Howard sought to have the car released to her, claiming ownership of the vehicle. Because the vehicle could not be released without proof of ownership, Mrs. Howard was given permission to enter the vehicle at the impound lot to obtain the proof of ownership she claimed was in the vehicle.

      Kevin Marks testified that he worked at the impound yard used by the Southfield

Police Department. He testified that, on the afternoon of August 19, 2004, a woman came to retrieve some personal belongings from the white Lexus. She was talking on her cell phone in an angry voice when she arrived. She immediately searched the floor board area of the vehicle and told the person to whom she was speaking on the phone that she couldn't fine "it."

Robert O. Bair testified that he had not given permission to Petitioner to use his Art Van credit card, did not possess and never sough a State of Ohio identification card, and never requested a new social security card. He also testified that he later noticed several fraudulent charges on multiple credit cards.

Petitioner presented no witnesses in his defense.

## II. Procedural History

Petitioner was convicted by a jury in Oakland County Circuit Court of possession of 50 or more but less than 450 grams of cocaine and unauthorized possession, retention, or secreting of a financial transaction device. On October 17, 2005, Petitioner was sentenced as a third habitual offender to 6-1/2 to 40 years in prison for the cocaine conviction and 2 to 8 years in prison for the financial transaction device conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals, raising a single claim – that the evidence presented was insufficient to convict him of possession of cocaine. The Michigan Court of Appeals affirmed the convictions. *People v. Howard*, No. 266552 (Mich. Ct. App. March 6, 2007).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court.

He raised the same claim raised in the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal. *People v. Howard*, 478 Mich. 930 (Mich. June 26, 2007).

Petitioner then filed a motion for relief from judgment in the trial court. He argued that trial counsel was ineffective in failing to: (1) subject the prosecutor's case to meaningful adversarial testing; (2) conduct pretrial discovery; (3) seek suppression of the evidence; (4) seek a *Walker* hearing; and (5) object to the bindover. He also claimed that appellate counsel was ineffective in failing to: (1) conduct diligent and meaningful research; (2) preserve his claims for further appellate review; and (3) raise trial counsel's ineffectiveness on appeal. The trial court denied relief. *People v. Howard*, No. 04-198157-FH (Oakland County Cir. Ct. July 24, 2008). Petitioner filed applications for leave to appeal in the Michigan Court of Appeals and Michigan Supreme Court. Both state appellate courts denied leave to appeal. *People v. Howard,* No. 293514 (Mich. Ct. App. Sept. 25, 2009); *People v. Howard*, 485 Mich. 1128 (Mich. March 29, 2010).

Petitioner then filed the pending habeas petition. He raises these claims:

I. Petitioner is entitled to a new trial where there was insufficient evidence to find for the conviction of possession.

II. Petitioner's appellate counsel was ineffective for failure to raise the issue of trial counsel's ineffectiveness.

III. Trial counsel was ineffective.

### III. Standard

The petitioner's claims are reviewed against the standards established by the

Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (*quoting Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (*quoting Williams*, 529 U.S. at 413). However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's

6

decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 789 (2011), *quoting Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87 (internal quotation omitted).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams,* 529 U.S. at 412. Section 2254(d) "does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). "[W]hile the principles of "clearly established law" are to be determined solely by resort to Supreme Court rulings, the decisions of

lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007), *citing Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Lastly, a federal habeas court must presume the correctness of state court factual determinations. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

## IV. Discussion

### A. Sufficiency of the Evidence

In his first habeas claim, Petitioner argues that the prosecutor presented insufficient evidence to establish that he possessed the cocaine found in the drawer of the vehicle.

In *Jackson v. Virginia*, 443 U.S. 307 (1979), the Supreme Court established that the standard of review for a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. Pursuant to 28 U.S.C. § 2254(d)(1), this Court must determine whether the state court's application of the *Jackson* standard was contrary to or an unreasonable application of Supreme Court precedent. In making this determination, the Court must afford the state court's findings of fact a presumption of correctness unless it

is established by clear and convincing evidence that the factual determination in the state court was erroneous. 28 U.S.C. § 2254(e)(1); *West v. Seabold*, 73 F.3d 81, 83 (6th Cir. 1996).

Under Michigan law, possession of a controlled substance requires a showing of "dominion or right of control over the drug with knowledge of its presence and character." *People v. McKinney*, 258 Mich. App. 157, 165; 670 N.W.2d 254 (2003) (internal quotation omitted). "Possession may be either actual or constructive, and may be joint as well as exclusive." *Id.* at 166. Mere presence where the controlled substance was found is insufficient to establish possession; rather, an additional connection between the defendant and the controlled substance must be established. *People v. Wolfe*, 440 Mich. 508, 520; 489 NW2d 748 (1992), *mod.* 441 Mich. 1201 (1992). Constructive possession exists when the totality of the circumstances indicates a sufficient nexus between the defendant and the controlled substance. *Id.* at 521.

The last state court to issue a reasoned opinion denying this claim was the Michigan Court of Appeals, which held as follows:

> Viewed in a light most favorable to the prosecutor, the evidence was sufficient to establish a sufficient connection between defendant and the cocaine to support an inference that defendant knew that the cocaine was present in the Lexus automobile that defendant was driving and had the right to exercise control over the cocaine. Although defendant did not own the vehicle, the evidence supports a reasonable inference that he repeatedly drove the vehicle during the months preceding the traffic stop. Defendant was driving the vehicle at the time of the traffic stop and the cocaine was found in a drawer under the driver's seat. A receipt containing defendant's real name and a credit card belonging to defendant's friend were discovered during the initial search of the drawer, and there was evidence that

> defendant had been using his friend's name and could have taken the credit card from his friend's home. Defendant acted nervously during the traffic stop and the officer saw defendant moving around in the vehicle. After defendant's arrest, a woman appeared at the police station, claiming to be defendant's wife, and sough access to the impounded vehicle. Viewed in a light most favorable to the prosecution, the circumstantial evidence was sufficient to enable the jury to find beyond a reasonable doubt that defendant constructively possessed the cocaine that was found in the vehicle.

*Howard,* slip op. at 1-2.

The Michigan Court of Appeals, although not specifically citing *Jackson*, clearly cited case law incorporating the *Jackson* standard. Considered in the light most favorable to the prosecution, the evidence presented at trial clearly supported a finding that the prosecutor established beyond a reasonable doubt that Petitioner was in possession of the cocaine. Therefore, the Court finds that the state court's holding was not contrary to or an unreasonable application of Supreme Court precedent.

### B.  Alleged Ineffective Assistance of Counsel

Next, Petitioner argues that his trial counsel was ineffective. Specifically, Petitioner claims counsel was ineffective in the following ways: (i) failing to subject the prosecution's case to meaningful adversarial testing; (ii) failing to conduct pretrial discovery; (iii) failing to move for suppression of the seized evidence; (iv) failing to move for a *Walker* hearing to test the validity of the consent to search the vehicle; and (v) failing to object to improper bind-over.

Respondent argues that these ineffective assistance of counsel claims are procedurally barred. Federal habeas relief is precluded on claims that a petitioner has not

presented to the state courts in accordance with the state's procedural rules. *See Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977). The doctrine of procedural default is applicable when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent." *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2006); *see also Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005); *Coleman v. Mitchell*, 244 F.3d 533, 539 (6th Cir. 2001). The last explained state court judgment should be used to make this determination. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991). If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion. *Id.*

Petitioner's claim of ineffective assistance of trial counsel was raised for the first time on collateral review in state court. The Michigan Supreme Court denied relief pursuant to Michigan Court Rule 6.508(D), which provides, in part, that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom. *See* Mich. Ct. R. 6.508(D)(3). The United States Court of Appeals for the Sixth Circuit has held that the form order used by the Michigan Supreme Court to deny leave to appeal in this case is unexplained because its citation to Michigan Court Rule 6.508(D) is ambiguous as to whether it refers to a procedural default or a rejection on the merits. *See Guilmette v. Howes*, 624 F.3d 286, 291-92 (6th Cir. 2010) (en banc). Consequently,

under *Guilmette*, the Court must "look through" the unexplained order of the Michigan Supreme Court to the state trial court's decision to determine the basis for the denial of state post-conviction relief.

The state trial court clearly denied relief on procedural grounds. The trial court cited Michigan Court Rule 6.508(D)(3) and concluded that Petitioner could not establish cause and prejudice because his underlying claim lacked merit and that he had not shown that a miscarriage of justice had occurred. Accordingly, Petitioner's ineffective assistance of counsel claims are procedurally defaulted.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991); *Nields v. Bradshaw*, 482 F.3d 442 (6th Cir. 2007); *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996).

Petitioner asserts ineffective assistance of appellate counsel as cause to excuse the procedural default. *See Washington v. Hofbauer*, 228 F.3d 689, 698 (6th Cir. 2000) ("[I]neffective assistance of counsel can provide the necessary 'cause' for the procedural default"). The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs claims of ineffective assistance of counsel. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). To show a violation of the Sixth Amendment right to effective assistance of counsel, a petitioner must establish that his attorney's performance was deficient and

that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction [or sentence] resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

"Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, __ U.S. __, 130 S. Ct. 1473, 1485 (2010).

[T]he *Strickland* standard must be applied with scrupulous care, lest

> 'intrusive post-trial inquiry' threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S. at 689-90. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. . . . The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S. at 690.
>
> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both "highly deferential," *id*., at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ___, 129 S.Ct. at 1420. The Strickland standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ___, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Richter*, ___ U.S. ___, 131 S. Ct. at 788.

The Supreme Court has held that a petitioner does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 754 (1983). The Court further stated:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the . . . goal of vigorous and effective advocacy. . . . Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id.* at 754. Strategic and tactical choices regarding which issues to pursue on appeal are

"properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

The state trial court held that appellate counsel was not ineffective in failing to raise Petitioner's numerous ineffective assistance of trial counsel claims on direct appeal because the claims lacked merit. To evaluate the reasonableness of the state court's conclusion that appellate counsel was not ineffective, the Court considers in turn each instance of alleged ineffective assistance of counsel.

### 1. Meaningful adversarial testing

Petitioner claims that his attorney failed to subject the prosecution's case to meaningful adversarial testing because counsel failed to move to suppress trial testimony that Petitioner's wife was talking to Petitioner on the phone when she was unsuccessfully searching for something in the impounded vehicle. This claim fails for two reasons. First, Petitioner fails to identify the basis for excluding this testimony. Second, counsel raised the possibility that the woman was talking to someone else, not Petitioner, when she was searching the vehicle by eliciting testimony from a police officer that Petitioner neither made nor received any phone calls while being booked. If the woman was speaking to someone else, the jury might conclude that the cocaine was someone's other than Petitioner's. Thus, counsel attempted to use the testimony to Petitioner's advantage. The Court concludes that trial counsel was not ineffective in his handling of this testimony.

### 2. Pretrial Discovery

Next, Petitioner argues that counsel was ineffective in failing to conduct any pretrial discovery. Petitioner asserts that counsel should have conducted discovery to contest the prosecutor's theory that Petitioner sent his wife to retrieve the cocaine from the vehicle and that he was talking to her on the phone while she searched the vehicle. Petitioner fails to identify any information related to this issue that counsel should have discovered. Similarly, he fails to identify specifically what discovery counsel should have undertaken. Petitioner's argument that counsel should have investigated potential alibi witnesses is similarly devoid of specifics. Petitioner fails to identify any potential alibi witnesses or to offer even a hint as to what the potential alibi witnesses' testimony would have been. "[A] petitioner cannot show deficient performance or prejudice resulting from a failure to investigate if the petitioner does not make some showing of what evidence counsel should have pursued and how such evidence would have been material." *Hutchison v. Bell*, 303 F.3d 720, 748-49 (6th Cir.2002) (*citing Austin v. Bell*, 126 F.3d 843, 848 (6th Cir. 1997) and *Martin v. Mitchell*, 280 F.3d 594, 608 (6th Cir. 2002)). Petitioner's conclusory, unsupported allegations are inadequate to satisfy either prong of the *Strickland* standard.

### 3. Suppression of Seized Evidence

In his third and fourth claims of ineffective assistance of counsel, Petitioner argues that counsel erred in not challenging the validity of Petitioner's purported consent to search his vehicle and not moving to suppress the evidence seized from the vehicle.

In denying Petitioner's motion for relief from judgment, the trial court held that the

search of Petitioner's vehicle at the scene of the stop was a permissible search incident to arrest, regardless of whether or not Petitioner consented. *Howard*, slip op. at 4-5, *citing Thornton v. United States,* 541 U.S. 615, 622 (2004).[1] In addition, the state court held that the inventory search of the vehicle was proper.

The right to the effective assistance of counsel does not create an "expectation that competent counsel will be a flawless strategist or tactician. An attorney may not be faulted for a reasonable miscalculation." *Richter*, 131 S. Ct. at 791. "Although courts may not indulge post-hoc rationalization for counsel's decision making that contradicts the available evidence of counsel's actions neither may they insist counsel confirm every aspect of the strategic basis for his or her actions. There is a strong presumption that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than sheer neglect." *Id.* at 790 (quotations omitted). Petitioner has not shown that the trial court's conclusion that, at the time it was rendered, the state court's decision that the search was proper was incorrect or an unreasonable application of Supreme Court

---

[1] Searches of an automobile conducted pursuant to an arrest are now controlled by the Supreme Court's decision in *Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710 (2009), which holds that such a search violates the Fourth Amendment unless "the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Id.* at 1724. This holding narrowed the circumstances under which an officer may conduct a vehicle search incident to arrest. The Court need not decide whether the search in this case was improper under *Gant* because "even where a search of an automobile conducted incident to an arrest is unconstitutional under *Gant*, suppression of the evidence seized is not warranted so long as, at the time of search, the 'police officer ... reasonably relie[d] on settled circuit precedent that authorizes the search of [the] vehicle.' *Buford*, 632 F.3d at 276–77. Under such circumstances, the good-faith exception to the exclusionary rule applies. Ibid." *United States v. Sain*, 421 F. App'x 591, 593 (6th Cir. 2011).

precedent. Therefore, his trial attorney's failure to file a futile motion was not ineffective.

### 4. Bind over

Finally, Petitioner claims that counsel was ineffective in failing to object to an improper bind over. At the preliminary examination, police officer David McCormick testified that he pulled over the vehicle Petitioner was driving because the vehicle's license plates had expired. During an inventory search of the vehicle, Officer McCormick discovered a bag of cocaine under the driver's seat. Given this testimony, it was not unreasonable for defense counsel to conclude that challenging the bind over would be futile.

Appellate counsel presented a viable issue on direct appeal, challenging the sufficiency of the evidence on the ground that Petitioner did not possess the cocaine found in the vehicle. Petitioner has not shown that appellate counsel's strategy in presenting this claim and not raising the claims contained in the motion for relief from judgment was deficient or unreasonable, nor has he shown that he was prejudiced by counsel's performance. Accordingly, he has failed to establish cause to excuse his default and these ineffective assistance of counsel claims are procedurally defaulted unless Petitioner demonstrates "that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

### 5. Miscarriage of justice exception

The Supreme Court explicitly has tied the miscarriage of justice exception to procedural default to a petitioner's innocence. *Schlup v. Delo*, 513 U.S. 298, 321 (1995).

Petitioner must assert a constitutional error along with a claim of innocence. To make a showing of actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found the petitioner guilty beyond a reasonable doubt." *Id.* at 327.

Petitioner fails to present new, reliable evidence in light of which no reasonable juror would have found him guilty. Therefore, Petitioner's claims are procedurally barred.

## V. Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (citation omitted). In this case, the Court concludes that reasonable jurists would not debate the conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted. Therefore, the Court will deny a certificate of appealability.

## VI. Conclusion

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

        s/Nancy G. Edmunds
        Nancy G. Edmunds
        United States District Judge

Dated: February 2, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 2, 2012, by electronic and/or ordinary mail.

        s/Carol A. Hemeyer
        Case Manager